#### UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | CR No. 21-00121-JJM |
| ) | |
| JOHN MACINTYRE ) | |

#### SENTENCING MEMORANDUM

*Confront the dark parts of yourself, and work to banish them with illumination and forgiveness. Your willingness to wrestle with your demons will cause your angels to sing - August Wilson*

For years, John MacIntyre was facing a deep, personal struggle. His desire to look at pornography, both adult and child, was his shameful secret. While he didn't quite understand why he was doing these things, he knew it was wrong and he was afraid and ashamed to ask for help. We all have personal demons. John's are the culmination of many factors, rooted in undiagnosed disorders, social isolation, and confusion.

Virtually every defendant charged with possession of child pornography in federal court is incarcerated and that number may be as high as ninety-seven or ninety-eight percent. Despite these statistics, despite the seriousness of his charge, John MacIntyre respectfully asks that this Court find that he is deserving of a probationary sentence. A sentence of three years' probation is sufficient, but no more than necessary to accomplish the sentencing factors under 18 U.S.C. § 3553(a). Beyond the normal conditions of supervision, Defense Counsel respectfully suggests that in lieu of incarceration or fines, Mr. MacIntyre be given a term of community service, perhaps with the suggestion that he volunteer with animals. This would present a wonderful opportunity for John to give back to the community, spend his free time productively, and possibly even help with some of his social struggles.

**Defendant's Background**

John clearly comes from a position of privilege. He was raised in a stable and loving home and continues to have the support of his family, who had no idea that he was battling these demons until he was arrested. John is smart, which while a blessing, has also contributed to the challenges he has been facing. His intelligence and work ethic masked a lot of his issues, particularly with neurodevelopment, socialization, and sexual interests. Because he did so well academically and with the more structured parts of life such as work and financial independence, he went largely undiagnosed throughout his life.

In January of 2022, Leo Keating, the clinical director at New England Forensic Associates, evaluated John MacIntyre. Mr. Keating has been responsible for the evaluation, assessment, and treatment of sexual offenders for over two decades. His CV and report are attached as Exhibit A for this Court's consideration. Mr. Keating found a quiet, highly intelligent, and incredibly anxious man in John. After conducting various tests, Mr. Keating opines that John meets the diagnostic criteria for Autism Spectrum Disorder, which went completely undiscovered and unaddressed during his childhood. While it certainly does not excuse John's behavior, it explains much of the particulars of this case.

While today much more is known about neurological development and individuals with Autism Spectrum Disorder, often times referred to as "being on the spectrum," this was not always the case. For individuals of John's age, who grew up going to school in the 1990s, these disorders were not discussed and often were overlooked or ignored. In many cases symptoms were improperly explained away as behavioral issues or lack of intelligence. In John's case, these clear

symptoms of the disorder were simply explained away as him being shy and quiet, without much of a social life.

But the reality is that being autistic in John's case led to some crucial limitations, particularly when it came to socialization and discovering his sexual identity. It is crystal clear from his history that John poses no physical threat to anyone. By his own admissions, he has been looking at pornography for years where he would download images, view them, and delete them. He was not communicating with others, sharing any of the materials that he viewed, or seeking to make contact with minors. John simply viewed pornography and deleted it. Socially, John has never dated, rarely goes out, and has not even had a first kiss. As Mr. Keating explains, John falls into "a subgroup of individuals who view a wide range of images because they are uncomfortable or unclear about their own sexual identity. They become conditioned to these images and continue to view them." (Keating Report page 7). While not a defense in any way, this explains how someone like John could view the images, delete them, and be unable to reach out for help.

Those who know John best have submitted support letters on his behalf. Attached as *Exhibit B*. The letters paint a clear picture of a young man who is exceptionally kind and thoughtful. John is the type of person who will spend hours looking for his sister's cat in the middle of the night. When his aunt, who suffers from paranoia and anxiety, needed a new car, John stepped in. He did all her research, negotiated the purchase, and even purchased the car for her. Unlike many men his age, he does not drink, has never tried any drugs, and he spends most of his time with his family or his two rescue dogs. While friendships have proved challenging for John, he did start a podcase with a friend where they reviewed theme parks and matters relating to Universal Studios. It is clear that John is a bit lost, socially, but he is fiercely kind, loyal, and hard-working. He makes life better for everyone around him.

While John's disorder has created significant social barriers for him, he has thrived otherwise. He graduated from high school and then college with a degree in film studies. Unfortunately, he was unable to find work in the area of film, likely due to his social limitations. Undeterred, he found other work. He managed to not only maintain steady employment after graduation, but with careful planning he was able to pay off his student loans within one year. He has contributed to the family household by buying appliances and helping support his parents. When he was arrested, he lost his job. Within a couple of months, he found another one. In the span of a year, he has impressed his new employer so much that he is now training new hires. John's work ethic speaks for itself and if allowed to remain in the community, he will continue to be a hard-working and productive member of society.

**The Sentencing Guidelines in this Case**

The Probation Department has calculated the applicable guideline sentencing range in this case to be 37 to 46 months. This calculation is facially correct, but the circumstances of this case warrant a non-guideline sentence. The sentencing guidelines are not mandatory. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). The Court is free to reject a guideline sentence, "perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 350-51 (2007). The sentencing guidelines in child pornography cases specifically have been subject to criticism for generating unreasonable results.[1]

---

[1] The Second Circuit has described it as "an eccentric guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010). The First Circuit has also acknowledged such criticisms: "let us be perfectly clear. We are not unsympathetic to concerns about perceived harshness in the child pornography guidelines." *United States v. King*, 741 F.3d 305, 309 (1st Cir. 2014).

In some cases, those harsh sentencing guidelines are warranted. One of the flaws, however, is that they can often be the result of enhancements that really do not meaningfully distinguish a defendant's actual conduct from other child pornography cases. Sentencing Commission statistics show that enhancements applied in Mr. MacIntyre's case, in fact, the only enhancements applied to his guidelines, such as the use of the computer enhancement and an enhancement for number of images is applied in over ninety percent of cases.[2] Mr. MacIntyre received a six-level enhancement for these two areas: use of a computer and number of images. If the Court were to disregard these enhancements, so commonly applied to every case, his guideline range would instead be 18 to 24 months. When considering that the low end of his guidelines should be 18 months, Mr. MacIntyre's request of probation, not far below the guidelines, is warranted.

**<u>An Appropriate Sentence under the Circumstances</u>**

The Court's goal, and the directive underlying the Sentencing Guidelines is to impose a sentence which is the least restrictive means to accomplish the purposes of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. The real question before the Court in this case is whether jail is needed to accomplish these purposes *for John MacIntyre*. Succinctly put: it is not. John is educated, comes from a supportive family, and has a solid employment history and job. These accomplishments are immutable, the Bureau of Prisons really cannot add to this list.

---

[2] U.S. Sent. Comm'n, *Use of Guidelines and Specific Offense Characteristics, Guideline Calculation Bases, Fiscal Year 2018*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2018/Use_of_SOC_Guideline_Based.pdf The use of computer enhancement applies in 96.6% of cases. *Id.* At 46. Some enhancement for the number of images applies in 95.7% of cases. *Id.*

For over a year while on pretrial release John has been going to counseling and regardless of his sentence, he would have to undergo mandated sex offender counseling. For the counseling to be effective, John does not need to be in a jail setting. When federal agents were executing the search warrant at his home, John immediately admitted to this crime and to having issues with the content. He waived his Miranda rights and gave a full statement before any of the forensic analyses were complete. After his initial appearance on this case, he awaited the results of the government's investigation and then waived presentation of the matter to a grand jury, saving time and resources by pleading to an information.

While the case has been pending, John did what he was unable to do prior to his arrest: he opened up to his family about his personal demons. His family, while shocked and quite frankly unable to understand, has been supportive of John's road to recovery. The counseling, as well as Mr. Keating's conclusions, have provided John with context and understanding of his actions. He is deeply motivated by a desire to address these issues and eradicate this from his life. *See Exhibit C*. Given his education, support system, lack of criminal record, and candor surrounding his actions, there should not be any question that his potential for rehabilitation is exponentially high.

Very often in cases involving child pornography, the fear is that individuals who view such materials will progress to hands-on offenses. While this can be a legitimate fear, it really has no place in John's case. What makes John so interesting is that for a long time he had become conditioned to viewing these images, yet always made sure to destroy them and continue on with his life. Immediately upon being confronted by law enforcement, John was open, candid, and frankly, grateful that this issue was now out in the open. He has continued to address these issues, both with his family and those close to him, and in counseling. During the time this case has been pending, John has continued to work and contribute to his family and has had absolutely no issues

with pretrial release or new improper conduct. Given all of these factors, it would be hard for the government to convince this Court that he needs to be incapacitated as a threat to public safety.

Certainly the Court needs to look at deterrence and punishment as well. In some cases, prison is needed to accomplish these principles of sentencing. However, once again John MacIntyre is unique. Probation is what is minimally necessary to satisfy deterrence and punishment. For someone like John, educated, from a good, hard-working family, and a hard worker himself, the biggest negative consequences of this case will be the collateral consequences. He will be a convicted felon for the rest of his life. John will also be labeled a sex offender, forced to bear the brunt of some of the worst perceptions and opinions from others. The stigma and shame will follow him forever.

Given the steady volume of child pornography cases brought over the years, it is hard to make the argument that sentences imposed by the Court lead to general deterrence. While all parties agree that the creation, distribution, and circulation of these images needs to be stopped, realistically it is incredibly difficult given the state of technology and the internet today. However, focusing on specific deterrence, and making sure that individuals do not re-offend, is a much more productive approach and one more likely to generate long-lasting results.

John does not need to be incarcerated to be deterred from this conduct again, nor does he need the incarceration for punishment. In fact, for someone like John, who is not neurotypical, is quiet, and is socially challenged, prison would be dangerous and counterproductive. John is precisely the type of individual that would run the risk of being taken advantage of while in custody and would not benefit from being surrounded by other criminal defendants. The best way to make sure John never appears before this Court again is to address the underlying causes of his criminal behavior in a productive setting: in this case, the community.

**Conclusion**

Far too often in the criminal justice system, prison is touted as the solution. While this does not mean that prison isn't warranted for many of the criminal defendants that come before this Court, it does mean that it should not simply be the default. Individuals are complex and so are their actions. We must push beyond the knee-jerk response that crime be met with jail and really look carefully at the individual and his or her circumstances.

At the heart of sentencing, the Court should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). A close examination of this case, and all of John MacIntyre's circumstances makes clear that incarceration is simply not needed to accomplish the principles of sentencing. He respectfully asks that this Court impose a sentence of probation, with carefully constructed conditions of supervision so that he can address his behaviors in a productive setting, continue to work and positively contribute to society, and get the help he needs.

> Respectfully submitted
> John MacIntyre
> By his attorney,
>
> /s/ Rebecca L. Aitchison, 8610
> Assistant Federal Defender
> 10 Weybosset St., Ste. 300
> Providence, RI 02903
> (401) 528-4281
> FAX 867-2814
> Rebecca_aitchison@fd.org

## **CERTIFICATION**

     I hereby certify that a copy of this motion was delivered by electronic notification to Ronald Gendron, Assistant United States Attorney, on August 11, 2022.

                                                 /s/ Rebecca L. Aitchison