IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JOHN DANIEL MACINTYRE | Cr. No. 21-CR-121-JJM-LDA |

GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons set forth herein, the defendant should be sentenced to a term of imprisonment of 42 months and a term of at least ten years supervised release and the mandatory $5,000 special assessment. Defendant is a prolific and sophisticated consumer of child sexual abuse material with an admitted sexual interest in prepubescent children. By his own admission, he committed federal crimes on a weekly basis for almost fifteen years; while he claims to have never touched a child, he admits fantasizing about it. A significant sentence is necessary to punish the defendant for his illegal conduct, to protect the public from him, and to deter others from engaging in this reprehensible behavior.

Nature and Circumstances of the Offense

It is incumbent on sentencing Courts to recognize that possession of child pornography is not a victimless crime, even when no identifiable victim is present make an impact statement in Court. It is a crime of violence, as the Supreme Court and the First Circuit have repeatedly acknowledged.

> The Supreme Court has repeatedly explained, for thirty years, that individuals depicted in child pornography are harmed by the continuing dissemination and possession of such pornography containing their

1

> image. Such materials are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Indeed, the Court has stated that as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being. These statements were well supported by medical and social science.

*United States v. Kearney,* 672 F.3d 81, 94 (1st Cir. 2012)(internal citations and quotations omitted).

The victims in this case are real children who were raped and molested in order to provide sexual gratification for the defendant before he cast their images into his electronic trash bin.

This defendant came to the attention of law enforcement through a national investigation into a known dark web site having that facilitated the sharing of child abuse material (images, links, and videos), with an explicit focus on indecent material depicting boys. Defendant accessed the dark web site utilizing "The Onion Router" or "Tor," which is a network for anonymous communication in which messages are encapsulated in layers of encryption, masking the IP addresses of users, and frequently used by individuals who view and share child pornography, in order to conceal their identities and location from law enforcement.

To access the Tor network, a user must first download and install the Tor software client. *See* www.torproject.org. During the search of MacIntyre's computer,

the Tor software was located. The Tor software protects users' privacy online by routing their communications through a series of relay computers (called "nodes") run by volunteers around the world. *See United States v. Levin*, 874 F.3d 316, 319 (1st Cir. 2017)(explaining Tor). When a Tor user visits a website, the IP address visible to that site is that of a Tor "exit node," not the user's actual IP address, which could otherwise be used to identify a user. *Id.* Accessing the dark web site MacIntyre utilized thus required several affirmative steps: downloading and installing the Tor software; acquiring the unique .onion address for the site from another user or targeted online postings; finding it on the Tor network; and, once there, gaining access to the site's content. In sum, it required a high degree of sophistication and determination to access child pornographic content while shielding the defendant's identity from law enforcement. Further, the use of Tor was only the latest technological innovation MacIntyre utilized in his decade and a half of immersion into child sexual abuse material. He earlier used LimeWire, a bit torrent peer to peer software which was in existence between 2000 and approximately 2010.

  Defendant's offense conduct was particularly dehumanizing. He admitted using child sexual abuse material 2-3 times per week for his sexual gratification then deleting the files. He estimated there could be hundreds of deleted child sexual abuse videos on his computer. In other words, every few days he masturbates to videos of children being raped, then tosses them away like garbage into his computer's trash can, only to seek new victims to degrade a few days later. In doing so, he fueled the market for

3

child sexual abuse material and further harmed the victims. In considering those horrific facts, the Court should call to mind the Victim Impact Statement of "Amy Unknown," recited in part by the Supreme Court in *Paroline v. United States*, 572 U.S. 434 at 440-41 (2014):

> Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them – at me – when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle…. My life and my feelings are worse now because the crime has never really stopped and will never really stop…. It's like I am being abused over and over and over again.

There is no way to forensically prove whether "Amy Unknown" is one of the hundreds of victims whose documented rapes went through defendant's laptop trash bin over the last fifteen years. Unfortunately, none of the victims who *were* found on defendant' computers were able to be identified as known victims by the National Center for Missing and Exploited Children. This is unsurprising. A 2018 Study published by ECPAT International and Interpol noted there are more than 1 million media files of child sexual exploitation and abuse materials in the International Child Sexual Exploitation (ICSE) Database. *Towards A Global Indicator on Unidentified Victims in Child Sexual Exploitation Material* (2018).[1] More than 50% of the files portray child

---

[1] Available at https://childrens-rights.digital/hintergrund/index.cfm/topic.324/key.1534

victims that have been not identified by law enforcement.  Over 60% of the unidentified victims are prepubescent, (like the defendant's sexual preference). *Id.*  The study found a link between the age of the child on and the severity of the abuse.  When victims were younger, the abuse was more severe. *Id.*

The First Circuit has repeatedly found that the effects of demand for child pornography, namely the perpetuation or increase of supply, justifies lengthy jail terms for child pornography possession. *See e.g., United States v. Gomera-Rodriguez*, 952 F.3d 15, 20 (1st Cir. 2020) (97-month term of incarceration substantively reasonable as means of deterring demand and thereby tamping down supply); *United States v. Hassan-Saleh-Mohamad*, 930 F.3d 1, 9 (1st Cir. 2019) ("fueling demand and supply…was a reasonable factor for the court to weigh"); *United States v. Gall*, 829 F.3d 64, 75 (1st Cir. 2016) (possession of child pornography fueled the market and thus harmed children).   One of the goals of sentencing in child pornography cases is the reduction of demand for child pornography, and serious jail sentences aid in achieving that goal.  *See id.*

<u>History and Characteristics of the Defendant</u>

Nothing in the history and characteristics of the defendant explains his criminal conduct.  Defendant grew up in suburbia in an intact, two parent family and was educated at Bishop Hendricken High School and graduated from the University of Rhode Island.  Prior to his arrest, he had his own podcast reviewing  theme parks and Universal Movie related matters.  There is no reported history of sexual abuse.  There is nothing in his personal background that warrants varying from the types of sentences

5

imposed in similar cases.

## Deterrence

Congress, the Supreme Court, and the Sentencing Commission have all expressed the view that deterrence is an important factor when fashioning an appropriate sentence in child pornography cases. *See e.g., Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand".) *See also United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007)( "Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

The First Circuit has recently upheld the substantive reasonableness of lengthy prison sentences in child pornography cases. *See e.g., United States v. King*, 741 F.3d 305 (1st Cir. 2014)(72 month sentence for possession of child pornography substantively reasonable); *United States v. Stone*, 575 F.3d 83 (1st Cir. 2009)(17.5 year sentence for distribution of child pornography substantively reasonable). As noted above, this is not a victimless crime, even though the victims of the defendant's crime are not able to

make their voices heard in court.  The sentence imposed should speak for them.

## Unwarranted Sentencing Disparities

Congress and the United States Sentencing Commission have determined that the appropriate framework for sentencing in federal cases is 18 U.S.C. § 3553 and the United States Sentencing Guidelines, as viewed in the light of *Booker* and its progeny. For at least the last decade, that has meant a conviction of possession of child sexual abuse material in a federal court demands a sentence of imprisonment.  According to data collected by the United States Sentencing Commission, the following sentences were imposed nationally in child pornography cases:

| Year | Prison Only | Split Sentence | Probation only |
|---|---|---|---|
| 2021 | 97% | 1.6% | 1% |
| 2020 | 98% | 1.2% | .5% |
| 2019 | 96.9% | 2.1% | .7% |
| 2018 | 96.8% | 2.3% | .6% |
| 2017 | 96.1% | 2.5% | .8% |
| 2016 | 97% | 2% | 0.7 % |
| 2015 | 97.1% | 1.5% | 1.0% |
| 2014 | 97.2% | 2.2% | 0.4% |
| 2013 | 97.5% | 1.6% | 0.5% |
| 2012 | 97.0% | 1.8% | 0.7% |

Available at http://www.ussc.gov/research/data-reports/geography. (Statistics cited come from Table 4 of *Statistical Information Packet for First Circuit* from each cited year).

In this district, while many sentences for child sexual abuse material offenses are outside the guideline range, they nonetheless consistently involve jail sentences at or about the recommended sentence here. In this case, the defendant could easily have been charged with receipt of child sexual abuse material, which carries a five-year mandatory minimum. Instead, he was permitted to plead guilty to an Information charging him with possession. Similarly situated defendants have recently been sentenced to sentences similar to the recommendation here. A non-exhaustive list includes the following:

- US v. Mulvey – 21-06-WES – 42 months
- US v. Normandin 21-05-JJM-24 months
- US V. Papazian, 18-94-WES – 42 months
- US v. Langlois, 18-173-WES – 42 months
- US v. Mendez-Garcia 18-167-JJM – 30 months
- US v Langlois - 18-73-WES – 42 months
- US v. Swant – 18—16-JJM – 30 months

## Conclusion

There is nothing in the present case that takes it out of the heartland of child pornography cases. Accordingly, a guideline range sentence is appropriate. For the reason set forth herein, the government recommends the defendant be sentenced to a term of imprisonment of 42 months followed by a period of supervised release, the mandatory $100 special assessment, and the mandatory $5,000 special assessment.

          Respectfully submitted,

          ZACHARY A. CUNHA
          United States Attorney

          /s/ John P. McAdams

          JOHN P. McADAMS
          Assistant U. S. Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 3, 2022, I caused the Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification

Rebecca Aitchison, Esq.

                                       /s/ John P. McAdams
                                       JOHN P. McADAMS
                                       Assistant U. S. Attorney,
                                       U. S. Attorney's Office
                                       50 Kennedy Plaza, 8th Floor
                                       Providence, RI 02903
                                       401-709-5000