1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - -X
 UNITED STATES OF AMERICA,    :  21-cr-00121(JJM)
                              :
                              :
                              :
                              :
    vs.                       :  United States Courthouse
                              :  Providence, Rhode Island
                              :
                              :
                              :
 JOHN DANIEL MACINTYRE,       :  Thursday, October 6, 2022
        Defendant.            :
                              :

- - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE JOHN J. MCCONNELL, JR.
UNITED STATES CHIEF DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    JOHN P. McADAMS, AUSA
                       U.S. Attorney's Office
                       50 Kennedy Plaza
                       Providence, RI  02903

For the Defendant:     REBECCA L. AITCHISON, AFPD
                       FEDERAL DEFENDER'S OFFICE
                       10 Weybosset Street, Suite 300
                       Providence, Rhode Island  02903

Court Reporter:  Lisa Schwam, CRR-RPR-RMR
                 One Exchange Terrace
                 Providence, RI  02903

1    (VIA VIDEO CONFERENCE)

2    06 OCTOBER 2022

3    (Time noted; 2:15 p.m.)

4            THE COURT:  Good afternoon, everyone.  We're

5    here for sentencing in the case of the United States

6    vs. John Daniel Macintyre, criminal action 21-121.

7            Would counsel identify themselves for the

8    record.

9            MR. McADAMS:  Good afternoon, your Honor.  John

10   McAdams on behalf of the United States.

11           THE COURT:  Good afternoon, Mr. McAdams.

12           MS. AITCHISON:  Good afternoon, your Honor.

13   Rebecca Aitchison on behalf of John Macintyre.

14           THE COURT:  Good afternoon, Ms. Aitchison.

15           Good afternoon, Mr. Macintyre.

16           THE DEFENDANT:  Good afternoon.

17           THE COURT:  Mr. Macintyre, we're conducting this

18   hearing remotely due to the emergency finding by the

19   government that a national emergency due to the

20   pandemic exists and that at times it's not safe for the

21   parties to meet in person.  I understand after talking

22   with your attorney that you agree to waive any right to

23   appear in person for your sentencing and you consent to

24   us proceeding remotely; is that true?

25           THE DEFENDANT:  Yes, I do, your Honor.

1              THE COURT:  I actually also understand you

2      prefer it that way; that's probably the case.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  The probation department, Mr.

5      Macintyre, issued a presentence report in your case.

6              Did you get a copy of that report?

7              THE DEFENDANT:  Yes, I did, your Honor.

8              THE COURT:  And did you have a chance to review

9      that with your lawyer?

10             THE DEFENDANT:  Yes, I was able to.

11             THE COURT:  Okay.  And did she answer all of

12     your questions about that?

13             THE DEFENDANT:  Yes, she did.

14             THE COURT:  Okay.  Great.

15             So how we're going to proceed, I'm going to

16     review the guideline range which is contained in the

17     PSR.  I'll see if there's any objections to it.  If

18     not, then Mr. McAdams will present an argument on

19     behalf of the government.  Your lawyer will then make

20     her argument on your behalf.  You'll then be allowed to

21     speak if you want to or not, it's up to you, and then

22     I'll get on with the business of the sentence, okay?

23             THE DEFENDANT:  Understood.

24             THE COURT:  So the guidelines are calculated as

25     follows.  Base offense level here is 18.  There's two

1    points added for the use of a computer.  There's four

2    points added because the 305 images fall between 300

3    and 600 images, which gives an adjusted offense level

4    of 24.  There's a two-point reduction for acceptance of

5    responsibility.

6         And does the government wish to make a motion on

7    the third point?

8         MR. McADAMS:  Yes, your Honor.

9         THE COURT:  Okay.  That will be granted.  For a

10   total offense level of 21.

11        Mr. Macintyre has no criminal history,

12   therefore, no criminal history points.  So a total

13   offense of 21, Criminal History Category I, brings with

14   it a recommended period of incarceration of 37 to 46

15   months.

16        Any objection, Mr. McAdams?

17        MR. McADAMS:  No, your Honor.

18        THE COURT:  Ms. Aitchison?

19        MS. AITCHISON:  No objection, your Honor.

20        THE COURT:  Great.  Thanks.  Mr. McAdams.

21        MR. McADAMS:  Thank you, your Honor.  Your

22   Honor, I submitted a written sentencing memorandum

23   which I'm sure you've reviewed and also obviously the

24   defense did as well.  I won't repeat everything that I

25   wrote in writing.

1          I've appeared before your Honor in many cases

2     involving this type of offense, and one of the things

3     that I try to say each time is that although there are

4     no victims who are giving victim impact statements in

5     court today or have submitted them, that is not because

6     there are no victims in this case.  In fact, there are

7     at least hundreds of victims and possibly thousands

8     based on the statements of the defendant himself.

9     They're not here to make a plea to the Court, and so

10     part of my argument is to try to do that, to try to

11     have a voice for them in this proceeding.

12          As I indicated in my memorandum, this is a very

13     serious crime; it's a crime of violence against the

14     victims that are in these images and videos.  This

15     defendant, by his own admission, has been committing

16     this crime on a near-weekly basis multiple times for

17     approximately 15 years.  So I think that that's

18     significantly more than we see in most child

19     pornography cases.  It also, I think, understates his

20     criminal history.  He's never been convicted of any

21     offense of any kind; this is his first criminal

22     conviction.

23          I think that in light of the nature of the crime

24     and the duration of the crime, that this defendant

25     ought to be sentenced to a sentence of imprisonment.

1    My recommendation is a sentence of 42 months, which is

2    approximately midway through the advisory guideline

3    range in this particular case.  It's also consistent

4    with the sentences imposed in quite a few, not every,

5    but quite a few of the recent cases in which defendants

6    have been convicted of this offense.  The defendant

7    could have been charged with an offense carrying a

8    five-year mandatory minimum.  He was not in this

9    particular case, which is also how most of those other

10    defendants were similarly treated who achieve those

11    types of offenses.  And I listed a half a dozen,

12    approximately, in my sentencing memo; some of whom were

13    sentenced by your Honor and others who were sentenced

14    by others in this district.

15            THE COURT:  Mr. McAdams, help me with this.  How

16    is that comparison fair in light of what my charge is,

17    which is to look at each case individually?  And I

18    understand I have to be concerned about disparate

19    sentences but, you know, I looked up Mr. Mulvey just

20    quickly, and his criminal history was extensive,

21    including a domestic violence charge post charged in

22    this case.  And obviously, you know, you can say what

23    you want, but we have a very different picture of the

24    person that stands before us here.  So I get really

25    concerned with just blindly looking at sentences and

1    trying to make anything of it.

2         MR. McADAMS:  Well, I don't think you should

3    look at them blindly, but your obligations do include

4    avoiding unwarranted sentencing disparities, and

5    obviously "unwarranted" being the operative word there.

6    So yes, I would agree with you; Mr. Mulvey can be

7    distinguished from this defendant based on his criminal

8    history which was non-child sexual exploitation type

9    criminal history.  As you mentioned, it was domestic

10   and there were some alcohol-related incidents as well.

11        This defendant has been committing this crime

12   every week for 15 years.  I think that that is

13   significant, and it isn't to be brushed away by the

14   mere fact that he's now been caught for the first time.

15   So I think that when you -- I've been doing a lot of

16   these cases for about ten years now.  And as you know,

17   there are sort of a spectrum of defendants.  And we've

18   seen some really horrific cases involving hands-on

19   conduct, and those defendants where we can establish

20   hands-on conduct are sort of in a different category.

21        And then we've got defendants who are attempting

22   to engage -- the evidence supports, are attempting to

23   engage in hands-on conduct that maybe is intervened

24   with by law enforcement.  And then there are defendants

25   whom the evidence that's provable shows that they are

1    engaged in viewing or receiving or distributing child

2    pornography or some combination thereof.

3         THE COURT:  I agree with those three, Mr.

4    McAdams, but don't you have to take the third category

5    and separate those out as well because within that

6    child-pornography-only case, you have folks that are

7    actively engaged in distribution -- well, first of all,

8    you have manufacturers, but I throw them up with the

9    hands-on.  Then you have people that are actively

10   engaged in distribution, and then you have -- and where

11   there's concern about possible hands-on in the past.

12   And then you have people that are, for lack of "only"

13   term, viewed as only.

14        And what's surprising about this case that I'm

15   curious about, because I know the other cases that I

16   did, every one of them had a distribution charge in

17   them that in plea bargaining the Court -- sorry, the

18   U.S. Attorney's Office, you know, would negotiate away,

19   for valid reason, you know, as part of the process, but

20   this one didn't.  And I'm curious if I should consider

21   the fact that there was never a distribution charge

22   here to represent a lower culpability, if that makes

23   sense.

24        MR. McADAMS:  So I guess I would say two things.

25   I don't know that it's the case that all of those

1    involved with a distribution charge because the statute

2    that criminalizes distribution and criminalizes receipt

3    is the same statute.

4                THE COURT:  Distribution or receipt, either one.

5                MR. McADAMS:  Correct, correct.

6                So that statute is the statute that carries the

7    five-year mandatory minimum.  And I think that the

8    evidence supports, it's undeniable, essentially, that

9    this defendant also engaged in that type of behavior.

10   He received, by his own admission, hundreds of

11   thousands -- excuse me, hundreds or thousands of child

12   pornography images through the Tor browser that he

13   downloaded onto his computer and going back even ten

14   years ago back through LimeWire which was a

15   peer-to-peer file-sharing system which back at that

16   time period in 2010, the case law was that if you had

17   that software on your computer, that was evidence that

18   you were distributing, because whatever you were

19   putting in your election was available to anyone else

20   who wanted to come along.  The case law changed over

21   time about that particular fact, but going back then,

22   that's how it would have been.

23               So I think this defendant fits with the types of

24   defendants that we have seen consistently that we don't

25   have evidence of any type of hands-on offense, but we

1    see them viewing child pornography and downloading

2    child pornography on their computers.  And what we've

3    done pretty consistently is distinguish those

4    defendants by if they have any position of trust in the

5    community that we are particularly concerned about,

6    such as a member of the clergy, a teacher, a coach, et

7    cetera, those people we will insist on that five-year

8    mandatory minimum for receipt.  And the people that

9    don't fall into that category, and I've done a number

10    of these with Ms. Aitchison, where we agree to some

11    other range that's below that five years.  And that's

12    typically we either do it as a binding plea or a

13    binding recommendation or a joint recommendation,

14    there's been kind of some ebb and flow in how that's

15    played out.

16          In this particular case, I didn't negotiate.  I

17    don't know exactly what the rationale was that I think

18    it was a quick agreement between Ms. Aitchison and

19    Mr. Gendron that he would plead to an information

20    shortly after he was charged on the complaint and

21    that's what led to him sort of pleading straight to the

22    information rather than being required to forgo that.

23    I mean, he's not -- there is no plea agreement so he's

24    not protected from that five-year charge.  Now, I mean,

25    we're good-faith operators -- I'm not going to go and

1    do that -- but I don't know exactly why they wouldn't

2    have wanted to do that to protect him and then, you

3    know, in our view.

4         So the way I look at it is how does he compare

5    to defendants that we've been handling this way going

6    back roughly as long as I've been doing these types of

7    cases, which is the early 2010s, the beginning of

8    the -- you know, around -- I think I started doing PSC

9    cases in 2013.  The sort of threshold year in my mind

10   is 2016 when I started doing a lot of these cases with

11   others in the office and we really made a concerted

12   effort to be consistent internally in how we were

13   handling similarly situated defendants.

14        And it's not easy; you know this, your Honor,

15   because every case is a little different and every

16   defendant is a little different.  But at some level you

17   have to create some form of consistency.  And that's

18   where ranges are appropriate, right?  And so I don't

19   think in looking at this case that this particular

20   defendant has anything crying out to me that separates

21   him from, you know, the dozen or more, two dozen or

22   more, defendants that have been sentenced for

23   possession of child pornography in this district in the

24   last eight to then years.

25        THE COURT:  Did you not read the licensed social

1    worker report that --

2         MR. McADAMS:  I did read it, your Honor.

3         THE COURT:  I've never seen that before.

4         MR. McADAMS:  I've seen it.  Ms. Aitchison has

5    submitted several to me over the years, frequently

6    authored by the same social worker, Mr. Keating.  I've

7    yet to see one in which he didn't come to the exact

8    same conclusion.

9         THE COURT:  I guess when he doesn't, they don't

10   send them to you.

11        MR. McADAMS:  That's what I suspect as well.

12   But, I mean, I have some issues with this.

13        A couple of years ago, your Honor, I had a trial

14   in front of Judge Smith.  And in that trial, the heart

15   of the defense was that the defendant had engaged in

16   fantasy and they called as an expert witness Dr. Barry

17   Wall, a highly respected psychiatrist, a medical

18   doctor.  He testified at length at that trial, and I

19   cross-examined him at length at that trial, about all

20   these same tests that were given by Mr. Keating in this

21   particular case.

22        And while we haven't been provided with any of

23   the questions or answers that were given by Mr. Keating

24   to Mr. Macintyre, in that case we were.  And what you

25   see is, and what Dr. Wall acknowledged on the stand, is

1      that those tests are very heavily driven by what the

2      defendant volunteers.  And they are actually possible

3      to be manipulated.  And much of what is done -- because

4      the people that are giving these tests, whether a

5      psychiatrist or a social worker, they're not criminal

6      investigators.  They don't look at this from the

7      perspective of trying to drill down forensically to the

8      truth in a legal/criminal sense of what actually

9      occurred; they're treating these people.

10          So Mr. Keating is trying to provide some options

11     to Ms. Aitchison, and also they're looking at these

12     individuals as a patient.  And so they take at face

13     value many of the statements that are made because

14     that's what doctors are trained to do.

15          And to me when you look at Mr. Keating's report,

16     you see a number of things.  First of all, on its face,

17     it says that the defendant is sexually attracted to

18     both males and females between the ages of 6 and 13.

19          THE COURT:  It's more than just 6 to 13; it's

20     also adult males and female adults.

21          MR. McADAMS:  Correct.

22          THE COURT:  I've never seen a report, Mr.

23     McAdams, to be honest with you, that has the breadth of

24     sexual interest that I saw listed in this report.  I've

25     never seen that before.

1          MR. McADAMS:  The exact same results were in

2     Mr. Hammond, who was the defendant in that particular

3     case.  He was, according to the results, sexually

4     attracted to every age, every gender, every race, every

5     ethnicity.  And you know, what's interesting to me

6     about this is this is a psychosexual report and there's

7     no discussion really of how any of these sexual

8     interests correlate to his risk.  I mean, the

9     conclusion is he's at a near -- I think the exact

10    phrase is a very low risk, extremely low risk, to

11    commit a future offense.  But there's no real

12    discussion of why that would be.  It's contrary,

13    frankly, to our anecdotal knowledge of defendants in

14    this district that have been convicted of this offense

15    and it doesn't make sense.

16          If an individual has, as Mr. Keating says here,

17    sexual interest in children -- okay, other ages as

18    well, but clearly according to the -- sexual interest

19    in children as young as 6 years old, and on page 5 I

20    believe it says sexuality may be a major problem for

21    this young man; he harbors serious reservations as well

22    as a measure of confusion or discontent in relation to

23    his impulses and the roles he's expected to assume and

24    yet how does that correlate?

25          If somebody has a sexual interest in children

1    and serious problems with sexual confusion and serious

2    problems with impulse control, how does that correlate

3    to then be an extremely low risk to re-offend?

4    Logically, it just doesn't follow.  And there is no

5    real discussion about it.

6         THE COURT:  Mr. McAdams, I mean, look, I'm not a

7    doctor, you're not a doctor; we just play one on TV,

8    right, in situations like this.  And I don't mean to go

9    back and forth because it's kind of the same argument

10   all along, but for someone that's like that -- and

11   you're right, we see similar things in a whole lot of

12   these cases -- the question then becomes, is there any

13   difference in outcome between someone who goes to jail

14   for, as you're recommending here, four years, and those

15   that didn't?  I mean, there's no cure for this

16   predilection, right; we all accept that.  We know that

17   there's treatment to mitigate it and there's treatment

18   to keep it in check, and there's treatment to deal with

19   it, but to somehow say that punishment is a way to

20   change someone's behavior given the situation, it

21   isn't.

22        Punishment for the purpose of punishment, which

23   3553 requires us to do, makes perfect sense to me.

24   Hold on just one second.  Let me get it out and then we

25   can.  But I don't now, nor do I ever, buy the argument

1    in these cases that jail time checks off the box of

2    deterrence because science tells us otherwise.  And

3    there are no statistics that tell us that a jail term

4    causes less recidivism in this area.  I've looked for

5    it; it doesn't exist.

6         So the better argument I think -- I don't mean

7    to give you the argument -- from my receptive point of

8    view, this kind of conduct deserves to be punished for

9    punishment sake because it's so bad and so evil and so,

10   you know, what you want.  But I just have a really hard

11   time arguing that punishment has any -- that jail has

12   any sort of deterrence or curative effect.

13        MR. McADAMS:  Well, my response to that,

14   respectfully, Judge, is that obviously I respect your

15   opinion on that and where you're coming from on that

16   and at the end of the day it's your interpretation

17   that's going to drive what sentence you give, but both

18   the Supreme Court and Congress disagree with the

19   assessment that you just made.

20        THE COURT:  Not the first time.

21        MR. McADAMS:  Right.  No, and it probably won't

22   be the last.  We all are entitled to have our own

23   opinions.  But, you know, the Supreme Court has said

24   that the logic of deterrence is a primary driver and

25   should be a primary driver in sentences in child

1   pornography cases and oftentimes citing Congress's

2   specific findings and specific statements that they

3   believe that punishment of individuals who possess

4   child pornography materials will affect the

5   dissemination of this material and will drive down

6   deterrence.

7          Now, obviously, if you don't want to accept it,

8   you don't have to accept it, but that's the argument

9   and it's not John McAdams, it's those authorities.  And

10  I've cited a bunch of cases, and you've seen them and

11  read them and I know you have.

12         The second piece is, what you just urged me to

13  argue, would be the next argument I was going to make

14  anyway, which is that this person -- and he is a person

15  and I don't mean to -- I don't lack empathy or caring

16  for this person -- he has committed this offense nearly

17  two to three times a week for 15 years.  So even if you

18  don't believe sentencing him to prison will stop him

19  from doing it again, he ought to be held accountable

20  for the behavior that he's already engaged in.  And

21  even if you accept all of the conclusions and

22  recommendations that Mr. Keating has laid out in his

23  report, I don't think those still rise to the level of

24  giving this defendant a complete pass on a prison

25  sentence.

1           And then the last thing I would say is, again,

2    just circling back to the beginning, it's important for

3    the victims of these cases that people like Mr.

4    Macintyre, who have undeniably fueled the demand for

5    their abuse by engaging in this behavior -- he's not

6    one of these people who came across this, he's been

7    deeply involved and going after this type of material

8    for well over a decade, half his life or close to it.

9    And he's got a college education, you know.  He

10   admitted in his own interview, he understood this was

11   wrong.  He may have an addiction, he may have a

12   sexuality problem that can't be solved, but I don't

13   think telling him not to do it again addresses the

14   needs under 3553.

15           And then I guess I did promise it would be my

16   last point.  One last point, which is the following.  I

17   don't think we do defendants like Mr. Macintyre any

18   service when we impose a straight probationary sentence

19   on them knowing that if he gets caught again, it's ten

20   years' mandatory minimum.  Nobody on this Zoom screen

21   has any discretion over that.

22           THE COURT:  Can I interrupt you on that because

23   I actually had that conversation with Molly beforehand.

24   But that's true whether he gets a probationary sentence

25   or if he gets a jail term.

1          MR. McADAMS:  I agree.  But I think giving him a

2     jail term will send a much stronger message to him.  I

3     think that we've seen -- Ms. Aitchison has clients -- I

4     think people like Mr. Andreozzi that recently got

5     sentenced to ten years by Judge McElroy, you know, were

6     probably shocked to learn that they were getting ten

7     years and that there was nothing anyone could do about

8     it.

9          And I think that if you go to prison for a

10    period of time, then the deterrent value of being an

11    inmate in a federal prison maybe makes you take it a

12    little bit more seriously the next time than being

13    told, you know, you've got a problem, you've got to go

14    to your counselor; you have to solve it in the other

15    ways that are non-incarcerative.

16         I say all that, Judge, with respect in terms of

17    our disagreement.

18         THE COURT:  Actually, we ended it as not

19    disagreeing particularly, per se.

20         MR. McADAMS:  Okay.  I have nothing else to say,

21    your Honor, except that I do think that even though Mr.

22    Macintyre is represented by the public defender, that

23    he's still eligible to pay the $5,000 mandatory special

24    assessment.  That requirement is not coterminous with

25    eligibility for appointed counsel, and based on the

1    information in the PSR about his financial ability to

2    pay a fine, I think he ought to pay the $5,000 special

3    assessment.

4        THE COURT:  John, am I correct that there's been

5    no claim for restitution in this particular case?

6        MR. McADAMS:  That's correct, your Honor,

7    because we did submit all the images to NCMEC, but none

8    of the images are known victims to make a restitution

9    claim.

10        THE COURT:  Okay.  I just wanted to make sure of

11    that.  Thanks.  Great.  Thanks, Mr. McAdams.

12        Ms. Aitchison.

13        MS. AITCHISON:  Thank you, your Honor.

14        The Court sort of touched on some of the pieces

15    of my argument, so I'll try to be brief in those areas.

16        THE COURT:  You can make it again, and then I

17    can attack my argument through you when you make it.

18        MS. AITCHISON:  Okay.  We can go back and forth

19    a few times too.

20        Your Honor, at this time we're asking that you

21    sentence Mr. Macintyre to a nonjail sentence.  We would

22    not oppose any particular conditions that you felt were

23    appropriate including home confinement restrictions of

24    that nature.  I know in my sentencing memorandum I

25    suggested some community service because I thought it

1    could be helpful.  Mr. McAdams alludes to a fine.  I

2    would agree that Mr. Macintyre's financial situation is

3    different than many of my clients, so I'll leave it to

4    the Court's discretion and leave it at that.

5        THE COURT:  Let me just interrupt you.  Mr.

6    McAdams I don't think was recommending a fine.  He was

7    recommending that I not waive the $5,000 JVTA.

8        MS. AITCHISON:  Oh, sorry, yes.  My rationale

9    still stands, but I appreciate the correction.

10       THE COURT:  Sure.

11       MS. AITCHISON:  But it's rare I think, your

12   Honor, that probation is appropriate in child

13   pornography cases.  I strongly submit to you this is

14   one of those cases.

15       I thought a lot about this case in preparation

16   for today and about Mr. Macintyre, and here's what I

17   kept coming back to.  So there's a national criminal

18   defense college that puts on sort of a -- it's like a

19   trial school litigation academy every year for two

20   weeks.  It used to be in Macon, Georgia, and

21   interestingly is now in Bristol, Rhode Island.

22       THE COURT:  My college and law school roommate

23   is a faculty member of that.

24       MS. AITCHISON:  Okay.  So you're familiar with

25   the school.  It's a right of passage for criminal

1    defense lawyers.  I went back in 2015.

2         And they sell a lot of items, but one of the

3    things that I purchased is a T-shirt.  And the T-shirt

4    has the logo from the college on it, but then it says

5    in big letters, "We Don't Defend Crimes, We Defend

6    People."  And I kept coming back to that T-shirt as I

7    was thinking about this because I don't know that I can

8    put it any better than that.  I'm not sitting here

9    saying to you child pornography should equal probation;

10   what I'm saying to you is that John Macintyre, the

11   person before you, should get probation, he is

12   deserving of probation.

13        The government, as they do in a lot of these

14   cases and I understand why, they like to focus on the

15   crime, right.  Their argument is often very largely

16   about how terrible child pornography is, but it's not

17   victimless, right, and then they included a number of

18   other cases which I'll get to.  But I want to be very

19   clear that no one here is suggesting that child

20   pornography isn't horrible, and we're certainly not

21   suggesting it's victimless, but there's a reason that

22   we don't just shell out the same sentence in every

23   case, and there's a reason that we have this incredibly

24   individualized sentencing process in the federal

25   system.  And that's because just like I don't defend

1    crimes, I defend people, you, as the Court, sentence

2    people, not just crimes.

3        And that's what I think brings us to the

4    sentencing disparity argument the government made.  I

5    appreciate the fact that the Court raised some of the

6    arguments that I was going to raise.  Here's what I can

7    say, your Honor.  While I suppose, theoretically, in

8    every case the government could charge receipt based on

9    the inference that if you possess something, you

10   receive it, we don't see it, the receipt portion, as

11   often in this district as we do with distribution.  The

12   receipt cases, at least that I've seen, generally

13   involve an individual in a chatroom, right, who is

14   receiving images from someone else.  It's a little bit

15   more to it than sort of just this inference.

16       But what I can tell this Court is that receipt

17   was never a discussion in this case.  There was never a

18   negotiation in this case where, you know, Mr. Macintyre

19   agreed to plead guilty in exchange for not charging him

20   with receipt.  That was never part of this; that's why

21   there's no plea agreement.  And so I'm a little

22   troubled at this idea that the government -- I

23   appreciate Mr. McAdams saying, you know, that they're

24   at their word, they wouldn't now charge him, but I want

25   to be clear, there was never that discussion.  So I

1    don't want there to be this implication somehow that

2    there was a discussed break for Mr. Macintyre.

3         And that leads me to the other cases that the

4    government referenced.  And I know you pointed out

5    *State vs. Mulvey* which is one of them.  I'm not going

6    to go through each and every single one, but what I can

7    say is what the Court essentially said; every single

8    one of them had receipt or distribution attached to it,

9    whether it was in the complaint and charged and later

10   dismissed and not indicted or the government put in the

11   plea agreement that they had evidence of receipt but

12   were agreeing not to charge it.  Some had multiple

13   counts of distribution.  Some, as you brought out with

14   Mr. Mulvey, had a violation of bail after being

15   charged.  One defendant had a money laundering count

16   dismissed.

17        And I'll also point out, your Honor, that every

18   single one of those cases -- because I also looked them

19   up -- had a plea agreement where there was a joint

20   recommendation.  Every single one of those defendants

21   had higher guidelines than Mr. Macintyre.  They're not

22   comparable.  I did find two cases in this district

23   where the defendant was charged with just possession.

24   And when I say "just possession," I mean, there's no

25   mention anywhere of receipt or distribution.  It's not

1    in the complaint.  It's not in the plea agreement.  I

2    can't speak to the evidence, but the docket is silent

3    on that issue.

4         And the defendant appears before the Court

5    pleading to possession and is sentenced.  The first is

6    *Decredico*, which is 15-CR-36.  His guidelines were 78

7    to 97 months and he received 12 months and a day.  The

8    second is *Donald Sly*, that's 20-CR-44.  His guidelines

9    were 46 to 57 months.  He received five years'

10   probation.  Both defendants had higher guidelines than

11   Mr. Macintyre.  So if you look at defendants who are

12   actually and truly similarly situated to Mr. Macintyre,

13   our request of probation is reasonable if you look at

14   that.

15        Your Honor, if you choose to punish Mr.

16   Macintyre with a jail sentence because of the

17   seriousness of the crime, we understand that, but the

18   idea that we penalize him additionally for being open

19   with law enforcement for admitting that he has a

20   problem, for wanting help, I ask you to reject that.  I

21   can tell you that oftentimes the government will come

22   in and argue that this individual hasn't taken

23   responsibility for what they've done; they've minimized

24   their conduct, they have misled the agents, right.

25        We have the exact opposite here.  We have

1    someone who sat down and just talked to law

2    enforcement, talked to them about things that they have

3    no ability to prove in court, right. And I think that

4    goes hand in hand with Leo Keating's evaluation. Mr.

5    McAdams --

6        THE COURT: Ms. Aitchison, I am shocked by how

7    many people charged with child pornography actually as

8    soon as they're confronted with it spill their guts. I

9    almost say it's routine in the cases that I've got. I

10   don't know why. I don't know if it's a psychological

11   thing like, oh, finally I'm relieved of this deep, dark

12   secret -- I don't know what it is -- but almost every

13   case I've seen that I can remember, it's been that

14   case.

15       MS. AITCHISON: I certainly haven't seen a case

16   similar to this where there's sort of a disclosure of

17   kind of this long history of behavior -- I think it's a

18   little unique -- but, you know, I accept the Court's

19   representation. But, you know, Mr. McAdams talks

20   about, okay, these evaluations are problematic because

21   they rely on what the person tells the evaluator,

22   right. I think that cuts against their argument

23   because we here have someone who sat down and said here

24   is everything I have done and was completely open and

25   honest about it. And someone with over 20 years of

1    experience -- by the way, Leo Keating's firm is

2    frequently used by the courts in Massachusetts in the

3    dangerousness assessments that they have over there.

4         So someone with over 20 years of experience

5    listened to all of that and prepared the report for you

6    that you see.  And I submitted it even though there are

7    aspects to it that aren't great, but it's honest and

8    it's truthful; and to a certain extent, sure, we can't

9    ever know if someone's a true risk, but if you have

10   someone who says, okay, I've been looking at images for

11   ten years and there's never been so much as an

12   allegation of anything else, I think it's hard to argue

13   that they're a danger in the sense of proceeding to

14   sort of hands-on offenses which I think is probably at

15   the back of everyone's mind in cases like this, right;

16   we want to make sure that it doesn't kind of escalate,

17   right, and kind of perpetuate that.

18        We have no evidence he's ever chatted with

19   anyone, ever tried to meet up with anyone.  He's never

20   sought out any minors.  So I think that that cuts

21   against the government's argument.  I think the Court

22   hit the nail on the head; it's really whether or not

23   incarceration is necessary.  You can always make the

24   argument that prison supports punishment, of course.

25   It's generally the most extreme version of punishment

1    that we have, but it's not the only version.

2         And we know that punishment can be accomplished

3    in all kinds of ways.  And in a case like this, we also

4    have this whole area of profoundly effective collateral

5    consequences, right.  We have someone who is college

6    educated and a very hard worker, who has worked really

7    hard to get himself to a place of stability, financial

8    and otherwise, and build up a life for himself and a

9    reputation and he's now going to be a sex offender.

10        This is going to make it into the local news,

11   right.  People in his town are all going to know.  The

12   people that he works with are all going to know.  The

13   first job that he had that he had for years fired him

14   when he was arrested.  I don't know that the second job

15   will keep him on.  I hope they do, but they may fire

16   him.  Any job that he applies for in the future, this

17   will be brought up and he'll have to discuss it.  He's

18   going to have a felony conviction for the rest of his

19   life.

20        And then there are the consequences down the

21   road, right.  Any time he goes anywhere with his

22   family, he is going to think about now who is there,

23   who is going to be there, can I go to the zoo, can I go

24   wherever.  His sister, who he is very close with,

25   submitted a letter with this court.  At some point she

1    may have a family, right.  Mr. Macintyre may have to

2    stay home when the entire family goes to watch her

3    child at the talent show or the school fair, right.  He

4    may have to sit at home and miss out on those things.

5    Those are all the little things that we don't think

6    about necessarily as punishment, but are incredibly

7    difficult.

8         And I just ask the Court to look at Mr.

9    Macintyre, look at his life.  I don't think we have

10   someone here who we would characterize as a predator in

11   the sense that -- and I use that phrase bluntly because

12   I think the Court has seen individuals who they have

13   determined to be predators, and I think that that is

14   not Mr. Macintyre.  He was looking at a lot of

15   pornography, yes, not just child pornography, adult

16   pornography as well, but it's also a psychological

17   issue for him; it's an illness.

18        And we know that, and you've brought out this

19   idea that science tells us there's no cure for it, but

20   this is someone who freely admits that he has a

21   problem.  He freely admits that he needs help.  He's

22   taken steps to get that help.

23        He's incredibly lucky in that he has family

24   support behind him who supports him and stands by him

25   even though they don't really understand, you know, why

1    he sort of has this proclivity.  But the idea that we

2    somehow punish him more because he acknowledged this

3    because he had this history I think is problematic and

4    flies in the face of logic.  I don't think this Court's

5    ever going to see Mr. Macintyre again.  I think the

6    Court should have confidence in that given who he is,

7    given his life that he's led to this point.

8         When we look at rehabilitation, which, you know,

9    the law tells us we need to look at, he clearly needs

10   counseling and services and treatment and that's

11   required by probation, but he also needs it.  I don't

12   think we can honestly sit here and say that he would

13   get better treatment and rehabilitation at the Bureau

14   of Prisons than he would in the community.  I just

15   don't think that that's true.  I think that when you

16   look at the idea of deterrence, it's hard.

17        I listened to another sentencing this morning

18   that the Court had that had to do with the dark web and

19   the internet, and I always struggle with this idea of

20   general deterrence, your Honor, because we see in the

21   statistics that an overwhelming majority of child

22   pornography defendants get jail.  But what I can tell

23   you is it's still a very large portion of our caseload,

24   right; we still get these cases day after day after

25   day.

1        And you know, the internet is a gift and a

2    curse, right, so I think realistically the idea that

3    putting Mr. Macintyre in jail is going to somehow stop

4    the dissemination of that, I just don't think is

5    practically correct.  I understand the argument and I

6    understand the desire to stop it, believe me I do, but

7    practically speaking, I don't think it does.

8        What I think can make a difference is actually

9    looking at the individual, addressing the underlying

10   issues, getting them help and that makes the

11   difference.  It doesn't make what he did any less

12   serious, but it accomplishes what the sentencing

13   factors actually get at, which is how do we put this

14   person in a different situation, how do we protect

15   society, how do we punish them, right.  And so when we

16   look at it in that lens, a nonjail sentence is

17   sufficient but no more than necessary; not in every

18   case, not for every defendant, but definitely in this

19   case, your Honor.

20       And I'm asking the Court to look at Mr.

21   Macintyre as an individual.  And I ask the Court to

22   consider a nonjail sentence with whatever, as I said,

23   conditions you feel are appropriate.  Thank you.

24       THE COURT:  Thanks, Ms. Aitchison.

25       Mr. Macintyre, do you want to say anything

1    before I impose sentence?

2         THE DEFENDANT:  Yes, I would like to.

3         So, your Honor, one of the core principles, the

4    center of my life, is accountability matters.  I

5    believe my adherence to accountability is the reason on

6    the morning of my arrest, I was forthcoming about the

7    nature of my crime.  For an addict such as myself, it's

8    dangerously easy to minimize, to hide behind the

9    delusions that actions, when done in secret, don't have

10   effect on others.

11        However, my actions contributed to a culture of

12   exploitation.  My viewing of child sexual abuse

13   material was a destructive choice.  It was not a choice

14   made a single time but habitually over an extended

15   period of time; A choice emboldened by a false notion

16   that actions taken in secret are divorced from the harm

17   those actions cause.

18        The first few months after my arrest felt like

19   the darkest era of my life; however, with the passage

20   of time and the aid of my therapist, I discovered the

21   reality of the matter.  The truth is, the real darkest

22   era of my life were those moments the last 15 years

23   when I viewed child exploitation material, because in

24   those moments I was victimizing fellow human beings.

25        Through therapy and self-reflection, I've been

1    working on understanding why I was drawn to those

2    images and videos.  The results of my psychosexual

3    evaluation were enlightening.  I now understand that my

4    previously undiagnosed autism, combined with general

5    anxiety, contributed towards my being underdeveloped in

6    certain social skills.  In times of stress, I used porn

7    as an escape, and escalation of my pornography

8    consumption led me from legal content to illegal

9    content.  And as is the nature of addiction, I ran from

10   high to high looking for a distraction, but it was an

11   empty distraction.  And more grievously, it was a

12   distraction that caused exploitation of other people.

13        It's important for me to state clearly, though,

14   that my autism, depression and anxiety, while

15   contributing factors, are not an excuse for my crime.

16   Hundreds of thousands of people are on the autistic

17   spectrum.  Millions of people have anxiety or

18   depression, but only a percentage of those commit

19   crimes.  I am among that percentage.

20        The choice to view child exploitation material

21   was my own.  The choice to put off getting treatment

22   for my porn addiction was my own.  I made those

23   choices, and I own the ramifications of those choices.

24        As I actively seek to correct my behavior, I'm

25   profoundly thankful my support system extends beyond

1    just my therapist.  I have the support of my mother and

2    father and sister.  They have always stood by me and

3    their support is unwavering.  But more importantly,

4    they hold me accountable.  In those moments of weakness

5    when my addict mindset tries to minimize or justify

6    destructive behavior, they unflinchingly give me

7    perspective.  They hold me to a high standard.

8         I believe very deeply in the importance of being

9    a hard worker.  While I admittedly neglected aspects of

10   my personal life, employment has remained a constant

11   because each day should be filled with actions of

12   value.  As I continue to use therapy to address my

13   social issues, I look forward to transferring my hard

14   work ethic to other aspects of my life.

15        I come before you ready for my sentence,

16   whatever form it takes, because I understand criminal

17   action needs to be addressed.  What matters above all

18   else is I never again create victims.  I wish to leave

19   a positive imprint on the world, and that mission will

20   remain the center of every action I take going forward

21   in life.

22        THE COURT:  Thanks, Mr. Macintyre.

23        It's probably hard for you to sit here when Mr.

24   McAdams, Ms. Aitchison and I and Ms. Picozzi from

25   probation all have history and experience and could

1    fill in each other's sentences oftentimes, because I'm

2    sure you know, you're not the first and, sadly, you

3    won't be the last that comes before us with this crime.

4         And there's two overriding things

5    that -- Congress tells us we have to look at -- and I

6    do do what Congress tells me I have to do.  They tell

7    us we have to look at various aspects of why we

8    sentence people, and we have to try and factor them all

9    in.  We call them 3553 factors, but they are as they

10   say to a court, you have to sentence people to punish

11   the crime, you have to sentence people to deter them,

12   make sure they don't do it again.  You have to sentence

13   people to deter others, you have to sentence people in

14   order to assist with their rehabilitation, you have to

15   sentence people to show the respect for the law.  And

16   then when you do all that, you have to find a sentence

17   that's enough to do all those things, but not more than

18   necessary to do all those things.

19        So in every case, what makes every case unique,

20   aren't always the facts but -- well, they are the

21   facts, but they are the facts as to which of those five

22   or six reasons that Congress tells us to consider mean

23   more to us.  And I think you probably picked up from my

24   conversation with Mr. McAdams that in your instance

25   when I look at the 3553 factors, the one that really

1    strikes me -- or it's actually two because they're kind

2    of the same thing, which is punishment and respect for

3    the law, that those are the ones that stand out for me

4    given your background and history.

5        I don't believe for someone like you that jail

6    is the only way to deter you.  And I don't believe what

7    I give you today has any sort of deterrent effect on

8    others.  But I do believe that my sentence has to

9    punish you, and I do believe that my sentence has to

10   show you that there's accountability for breaking the

11   law.  And I obviously agree with all the attorneys that

12   this is not a victimless crime.  You may be far down

13   the ladder of closeness to the evil, but it's no less

14   evil, and it's a no less horrible part of the ladder.

15       And then the other thing that it's actually not

16   in 3553, I don't think, but that we do have to

17   consider, is what Mr. McAdams says which is disparities

18   within -- maybe it is in there, I don't know -- it's

19   somewhere in a statute somewhere that tells us we have

20   to consider disparities.  And I've sentenced less

21   people than Ms. Aitchison has represented or less

22   people than Mr. McAdams has prosecuted charged with

23   child pornography -- I've probably sentenced 30, 40,

24   I'm guessing, over my 10, 11 years -- and I think all

25   but two have gone to jail is my -- I haven't studied

1    this, but that's off the top of my head.

2           And in each one of those cases, there was a

3    unique aspect -- each one of the cases of nonjail,

4    there was a unique aspect to them that caused me to

5    determine that there were alternative ways to

6    accomplish the sentencing goals without jail.  One was

7    an 18 year old -- another Bishop Hendricken graduate,

8    as a matter of fact, as am I.

9           You're LaSalle, aren't you, Mr. McAdams?

10          MR. McADAMS:  Your Honor, I'm from

11   Massachusetts.  I'm Archbishop Williams.

12          THE COURT:  Oh, no, forget it.

13          I can't remember his name, sadly, right now, but

14   there was one in particular early on that was that.

15   And I don't remember what the other one was; I just

16   remember someone telling me it was one other time.

17          And the truth is, when I focus on punishment and

18   I focus on respect for the law, your lawyer has

19   convinced me that you will be punished without a jail

20   sentence.  This is one of those rare and unusual cases

21   where the Court does not need to send you to jail in

22   order to punish you or to accomplish respect for the

23   law or any of the 3553 factors.  It's very unusual, but

24   yours is that unusual case; both after reading --

25   understanding it came from the defendant, but reading

1    the psychological report that came and the undiagnosed

2    autism spectrum disorder.

3         Your argument by the attorney -- I don't know

4    why she chose August Wilson, I don't know that I've

5    ever told anyone that August Wilson is my favorite

6    playwright, who I've actually taken whole classes

7    about, but somehow she was going to win me over when

8    she began with the August Wilson quote.  But seriously,

9    the effect of a felony on someone like you, felony

10   conviction, particularly a sexual offender conviction,

11   will punish you severely.  I don't need to repeat

12   everything your lawyer said because she did the best

13   job I've heard about the punishing effect that this

14   will have on someone like you.  And your statement

15   today actually, and what I've read about you in the

16   PSR, shows me that you understand accountability and

17   respect for the law as a meaningful aspect.  And

18   because it is statutorily allowed and called for.  The

19   Court's going to impose a period of five years of

20   probation.

21        Do I have that right, Ms. Picozzi?

22        PROBATION OFFICER:  Yes, your Honor.  You can

23   impose up to five years of probation.

24        THE COURT:  Okay.  That's what I thought.

25   Thanks, I appreciate that.

1          The Court's going to impose a period of five

2     years of probation.  A fine, per se, is not

3     appropriate; however, the Court will impose the $100

4     mandatory assessment and the 5,000 JVTA payment.  But

5     because of your representation by the public defender

6     and your financial condition, the Court finds that you

7     are not responsible for the AVAA 17,000.  But the Court

8     will impose the $5100 special assessment.

9          And Mr. Macintyre, in addition to the standard

10    conditions of supervised release, you shall participate

11    in a program of mental health treatment and sex

12    offender specific treatment, both as directed and

13    approved by probation.  You shall participate in

14    testing in the form of polygraphs or other methodology

15    approved by the Court to measure compliance with

16    supervision or treatment.  You shall contribute to the

17    cost of all such treatment and testing based on your

18    ability to pay as determined by probation.

19         You shall comply with all applicable federal and

20    state laws regarding registration of sex offenders in

21    the state of residence, employment and school

22    attendance and shall provide verification of compliance

23    with this requirement to probation.  You shall permit

24    probation, who may be accompanied by local, state or

25    federal law enforcement authorities, upon reasonable

1   suspicion of a violation of supervision, to conduct a

2   search of your residence, automobile, workplace,

3   computer or other electronic communication data device

4   or media.

5       You must not use, possess, procure or otherwise

6   obtain any electronic device that can be linked to any

7   computer networks, bulletin boards, internet service

8   providers or exchange formats involving computers

9   unless preapproved by probation.  You must submit to

10  unannounced examinations of your computer or other

11  electronic equipment by probation, who may be

12  accompanied by either local, state or federal law

13  enforcement authorities, which may include retrieval

14  and copying of all data from the computer to ensure

15  compliance with this condition.

16      In addition, you must consent to the removal of

17  such equipment for the purpose of conducting a more

18  thorough investigation and must allow, at the direction

19  of probation, installation on your computer or other

20  electronic equipment any hardware or software system to

21  monitor your computer use.

22      You shall have no contact with any child under

23  the age of 18 without the presence of an adult who is

24  aware of your criminal history and is approved in

25  advance by probation.  You shall not loiter in areas

1    where children congregate.  These include, but are not

2    limited to, schools, daycare centers, playgrounds,

3    arcades, amusement parks, recreation parks and youth

4    sporting events.

5           You shall not be employed in any occupation,

6    business or profession, or participate in any volunteer

7    activity where there is access to children under the

8    age of 18, unless authorized in advance by probation.

9    And you shall live in a residence approved by probation

10   and not reside with anyone under the age of 18 unless

11   approved in advance by probation.

12          Ms. Picozzi, have I left anything out from

13   probation's perspective?

14          PROBATION OFFICER:  No, your Honor.

15          THE COURT:  Great.  Anything further for the

16   government?

17          MR. McADAMS:  No, your Honor, thank you.

18          THE COURT:  Ms. Aitchison, anything further for

19   Mr. Macintyre?

20          MS. AITCHISON:  No, thank you, your Honor.

21          THE COURT:  Mr. Macintyre, I think -- Ms.

22   Picozzi, will someone from probation be in touch with

23   Mr. Macintyre?

24          PROBATION OFFICER:  Yes.  Brandon Miles will be

25   contacting you later today to set up reporting

1    instructions.

2              THE DEFENDANT:  Okay.

3              THE COURT:  Thank you all.  I appreciate it.

4    We'll stand adjourned.

5              (Time noted; 3:08 p.m.)

1

2                        **CERTIFICATION**

3    I certify that the foregoing is a correct transcript from the

4    record of proceedings in the above-entitled matter.

5

6

7    Official Court Reporter              November 22, 2022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25